**In re CASH AND CARRY TOOL SUPPLY CO., INC., Employer ID No. 85–0273258, Debtor.**

**Bankruptcy No. 81–01264 M A.**

United States Bankruptcy Court, D. New Mexico.

July 30, 1982.

Douglas T. Francis, Albuquerque, N. M., for trustee.

Philip H. Gursky, Albuquerque, N. M., Wiley F. James, III, El Paso, Tex., for Orville's Cash & Carry Tool Supply Co., Inc.

Nathan H. Mann, Albuquerque, N. M., for Unsecured Creditors' Committee.

## MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

This matter came before the Court on the trustee's Motion to Determine Venue and to Consolidate. The trustee of Cash and Carry Tool Supply Co., Inc., a New Mexico corporation (NM Cash & Carry), moved the Court to find that Orville's Cash & Carry Tool Supply Co., Inc., a Texas corporation (El Paso Cash & Carry), is an affiliate of the New Mexico corporation. The trustee further moved that, if affiliation was found, the venue of the bankruptcy of the Texas corporation be changed to this Court, pursuant to Bankruptcy Rule 116(c)(4), and the bankruptcies consolidated. Finally, the trustee also moved to have the same trustee appointed to oversee the Texas business as was appointed to oversee the New Mexico operation.

The facts are these: NM Cash & Carry was incorporated in May 1979. Sole share-

holders are Orville R. Glass and Emma L. Glass. Orville R. Glass is president of the corporation. In January 1980, El Paso Cash & Carry was incorporated in Texas. Sole shareholders are Orville R. Glass and Emma L. Glass, Orville's wife. Orville R. Glass is president of the corporation. NM Cash & Carry filed bankruptcy in December 1981 in the District of New Mexico; El Paso Cash & Carry filed bankruptcy in April 1982 in the Western District of Texas, El Paso Division. Orville R. Glass was deposed on April 15, 1982, pursuant to Bankruptcy Rule 205 as part of the New Mexico proceedings.

## I.

## USE OF THE DEPOSITION OF OR-VILLE GLASS FOR PURPOSES OF DETERMINATION OF VENUE

At the hearing on the trustee's motion to determine venue, the trustee requested that the Court take judicial notice of the deposition of Orville R. Glass, taken pursuant to Bankruptcy Rule 205 in the New Mexico bankruptcy proceeding. El Paso Cash & Carry objected to the admission of the deposition, since it was being offered against the Texas corporate debtor and since attorneys for that debtor were not present when the deposition was taken. The trustee argued that it was being offered as a 205 examination pursuant to order of this Court, and an admission of a party-opponent. The trustee made an offer of proof on relevance of the deposition as to change of venue consideration, citing pp. 27–28 and p. 37 specifically, but requested that judicial notice be taken of the entire deposition. It was further urged that the deposition could be admitted as it was not hearsay under Fed.R.Evid. 801(d)(2)(D).

In order to admit statements which concern El Paso Cash & Carry under 801(d)(2)(D), it must be found that Orville Glass was an agent of that corporation. To find a principal-agent relationship, it must be found that El Paso Cash & Carry had a right of control over Mr. Glass. *Halliburton v. Texas Indemnity Ins. Co.*, 147 Tex. 133, 213 S.W.2d 677 (1948); *Keith v. Blanscett*, 450 S.W.2d 124 (Tex.Civ.App.1969);

*Vahlsing Christina Corp. v. Ryman Well Service, Inc.*, 512 S.W.2d 803 (Tex.Civ.App. 1974); *Sendjar v. Gonzalez*, 520 S.W.2d 478 (Tex.Civ.App.1975). This analysis is somewhat convoluted, since Mr. Glass and his wife were sole shareholders of the corporation; however, the discussion here solely concerns Mr. Glass' position as president of El Paso Cash & Carry and manager of the El Paso business.

Since the corporation cannot act except through its officers and managers, the officers and managers become agents to the extent that they act for the corporation. Mr. Glass was clearly representing El Paso Cash & Carry when he operated a tool supply company owned by the corporation. Even though he owned the corporation, it was a corporate action, not an individual action, which permitted him to operate the business and as such the corporation controlled him. The president of a corporation is entrusted with the management of a business by the board of directors, *San Antonio Joint Stock Land Bank v. Taylor*, 129 Tex. 335, 105 S.W.2d 650 (1937), and that entrustment may be either express or by implication. *Continental Oil Co. v. Baxter*, 59 S.W.2d 463 (Tex.Civ.App.1933). Since Mr. Glass served on the board of directors with his wife and son, it may be implied that he had authority through that board of directors to manage the El Paso store owned by El Paso Cash & Carry. Thus, as to the operation of that store, Orville Glass was an agent of El Paso Cash & Carry.

Additionally, Fed.R.Evid. 801(d)(2)(D) requires that the statement in question concern a matter within the scope of the agency made during the existence of the relationship. As to the matters coming within the scope of the agency relationship, we find that any matter concerning El Paso Cash & Carry is a matter within Mr. Glass' agency. That the deposition was taken while the agency existed is clear. El Paso Cash & Carry was incorporated in January 1980 and Mr. Glass has been president of that business from that time through the present. Clearly the agency relationship existed on April 15, 1982.

For the reasons stated above, this Court finds that El Paso Cash & Carry's objections to the admission of the deposition of Orville R. Glass should be overruled. The deposition can be considered in a determination of venue of the El Paso Cash & Carry bankruptcy proceeding.

## II.

### VENUE

Fed.R.Bankruptcy P. 116(c) provides that where bankruptcy petitions are filed in different districts by a bankrupt and an affiliate, the court in which the first petition is filed shall determine the court or courts in which the cases should proceed. The rule requires that the court should take into consideration "the interest of justice" and "convenience of the parties." Fed.R.Bankruptcy P. 116(c)(4). This Court found, during the hearing on the trustee's motion, that NM Cash & Carry and El Paso Cash & Carry are affiliates. There is no dispute that NM Cash & Carry filed its petition in this Court prior to the filing of the El Paso Cash & Carry petition and that this is the proper court to hear the venue motion. The only matter left for this Court to determine is whether the interests of justice and the convenience of the parties require that the venue of the El Paso Cash & Carry bankruptcy be changed to the District of New Mexico.

The "broad and somewhat nebulous" factors of "convenience of parties" and "interest of justice" have been refined into a test consisting of five more substantial requirements. *Hadar Leasing International Co., Inc., v. D. H. Overmyer Telecasting Co., Inc., et al.* (*In re Hadar Leasing International Co., Inc.*), 7 B.C.D. 686, 14 B.R. 819 (S.D.N.Y.1981). Those requirements are:

1. Proximity of creditors of every kind to the court.

2. Proximity of the debtor to the court.

3. Proximity of witnesses necessary to the administration of the estate.

4. Location of assets.

5. Economic administration of the estate.

*Id.* at 687, 14 B.R. at 820. In *Hadar*, the proceedings were transferred to Ohio from New York upon a finding that the major creditors were either in Ohio or as close to Ohio as New York, that the debtor was incorporated in Ohio, and that substantially all the assets of the debtor were in Ohio.

*In re Cameron Cola, Inc.*, 5 B.C.D. 139 (S.D.Ohio 1978), is very similar to the instant case. In *Cameron*, the two largest creditors of the debtor moved to have venue change from Ohio to Kentucky which is where those creditors were located. The court, upon a finding that the corporate officers, directors, and stockholders were in Ohio and that the other creditors were closer to the *situs* of the Ohio court, denied the motion to transfer venue.

Finally we turn to *In re Macon Uplands Venture*, 2 B.R. 429 (Bkrtcy.M.D.Ga.1979), and 5 B.C.D. 1279, 2 B.R. 444 (Bkrtcy.D.Md. 1980). This case is peculiar in that each court cited decisions that it had jurisdiction to decide the venue question; happily the courts reached the same conclusion on the same general findings of fact. The evidence in *Macon* showed that (1) the principal assets of the debtor were in Georgia; (2) the principal business operation of the debtor was in Georgia; (3) the court in Georgia could better oversee the operation of the business; (4) the majority of the creditors of the debtor were in Georgia; and, (5) the debtor was a limited partnership organized under Georgia law. *Id.* at 432 and 5 B.C.D. at 1281–1284, 2 B.R. at 446–451.

█ In considering the instant case in light of the cases reviewed above, this Court finds that it is undisputed that (1) the debtor El Paso Cash & Carry's principal assets and business are in El Paso, Texas; (2) the debtor is organized as a corporation under Texas law; (3) NM Cash & Carry is the only creditor of El Paso Cash & Carry not located in El Paso, Texas; and (4) the Texas court could better supervise the operation of the El Paso Cash & Carry store.

In light of these findings, there is no basis upon which this Court can transfer venue of the El Paso Cash & Carry proceedings to New Mexico. To paraphrase the court in *Cameron, supra,* there is no doubt that a transfer of venue would be convenient for NM Cash & Carry, but that is not enough, in the opinion of this Court, to qualify as either convenience of the parties or the interests of justice. The trustee's motion is denied. We do not reach the motion to consolidate.

An appropriate order shall enter.